**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Kenneth Fitzgerald Palmer, | No. CV 12-01786-PHX-JAT |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff's appeal from the Administrative Law Judge's denial of Plaintiff's application for supplemental security income under Title XVI of the Social Security Act.

**I.    PROCEDURAL BACKGROUND**

On December 4, 2007, Plaintiff Kenneth Fitzgerald Palmer filed a Title XVI application for supplemental security income with the Commissioner of the Social Security Administration (the "Commissioner"), alleging that his disability began on December 1, 2007. (Record Transcript ("TR") 22). Plaintiff's claim was denied initially on April 18, 2008, and upon reconsideration it was denied again on December 2, 2008. (*Id*.).

Following the denials, on January 5, 2009, Plaintiff filed a request for a hearing with an Administrative Law Judge ("ALJ"). (*Id*.). Plaintiff appeared and testified before the ALJ on April 20, 2010. (*Id*.). On June 22, 2010, the ALJ issued a decision finding that Plaintiff suffered from the severe impairments of chronic low back pain with

radiculopathy, multilevel degenerative disc disease of his lumbar spine, hypertension, shortness of breath, a reading and a spelling disorder, probable borderline intellectual functioning, depression, anxiety disorder, posttraumatic stress disorder ("PTSD"), and a history of opioid abuse in remission.  (TR 24).  The ALJ found Plaintiff was unable to perform any of his past relevant work.  (TR 30).  However, the ALJ found that Plaintiff was not disabled under the Social Security Act because he retained the Residual Functional Capacity to perform jobs that exist in significant numbers in the national economy.  (TR 30-31).

Following the ALJ's denial of Plaintiff's claim, Plaintiff requested review of the ALJ's decision with the Appeals Council, Office of Hearings and Appeals, Social Security Administration.  (TR 16).  On June 25, 2012, the Appeals Council denied Plaintiff's request for review.  (TR 1).  The Appeals Council adopted the ALJ's decision as the final decision of the Commissioner.  (*Id*.).

On August 21, 2012, Plaintiff filed his Complaint with this Court for judicial review of the Commissioner's decision denying his claim, which is the subject of this appeal.  (Doc. 1).  Plaintiff has filed a brief (the "Brief") seeking judicial review of the ALJ's denial of her claim.  (Doc. 17).  In the Brief, Plaintiff argues that the Court should overturn the ALJ's decision and remand the case with instructions to award benefits because the ALJ's decision contains legal error as it lacks substantial justification to support the ALJ's conclusions.  (*Id*. at 39).

## II.    LEGAL STANDARD

The Commissioner's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error."  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quotation omitted).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ."  *Gallant*

*v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted).  In determining whether there is substantial evidence to support a decision, this Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions.  *Reddick*, 157 F.3d at 720.  "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence."  *Gallant*, 753 F.2d at 1453 (citations omitted).  If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination.  *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).  The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Thus, if on the whole record before this Court, substantial evidence supports the Commissioner's decision, this Court must affirm it.  *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g).

### A.    Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show among other things, that he is "under a disability."  42 U.S.C. § 423(a)(1)(E).  "The mere existence of an impairment is insufficient proof of a disability."  *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citing *Sample v. Schweiker*, 694 F.2d 639, 642–43 (9th Cir. 1982)).  Disability has "a severity and durational requirement for recognition under the [Social Security] Act that accords with the remedial purpose of the Act."  *Flaten v. Sec'y of Health & Human Svcs.*, 44 F.3d 1453, 1459 (9th Cir. 1995).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person is "under a disability only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. at § 423(d)(2)(A).

"A claimant bears the burden of proving that an impairment is disabling." *Matthews*, 10 F.3d at 680 (quoting *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)). Thus, "[t]he applicant must show that he is precluded from engaging in not only his 'previous work,' but also from performing 'any other kind of substantial gainful work' due to such impairment." *Id*. (quoting 42 U.S.C. § 423(d)(2)(A)).

**B.     Five-Step Evaluation Process**

The Social Security regulations set forth a five-step sequential process for evaluating disability claims.  20 C.F.R. § 404.1520; *see also Reddick*, 157 F.3d at 721 (describing the sequential process).  A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry and the claim will be denied.  20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721.

The five steps are as follows:

First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled.

Second, if the claimant is not gainfully employed, the ALJ determines whether the claimant has a "severe medically determinable physical or mental impairment."  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id*. at § 404.1520(c). Basic work activities means the "abilities and aptitudes to do most jobs." *Id*. at § 404.1521(b).  Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." *Id*. at § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)).  The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

- 4 -

Third, having found a severe impairment, the ALJ next determines whether the impairment "meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1)."  SSR 12-2p, 2012 WL 3104869 at *6 (July 25, 2012).  If so, the claimant is found disabled without considering the claimant's age, education, and work experience.  20 C.F.R.§ 404.1520(d).

When a claimant's impairments do not meet or equal a listed impairment under appendix 1, the ALJ will assess a claimant's Residual Functional Capacity ("RFC").  *Id*.  The ALJ bases the RFC assessment on all relevant evidence in the case record.  *Id*.  The ALJ considers the effects of all of the claimant's medically determinable impairments, including impairments that are not severe.  *Id*.

At steps 4 and 5, the ALJ uses the RFC assessment to determine whether the claimant is capable of doing any past relevant work (step 4) or any other work that exists in significant numbers in the national economy (step 5).  *Id*.; 20 C.F.R. § 404.1520(a).  If the claimant is able to do any past relevant work, the ALJ will find that he or she is not disabled.  *Id*.  If the claimant is not able to do any past relevant work or does not have such work experience, the ALJ determines whether he or she can do any other work.  *Id*.  The usual vocational considerations apply (age, education, and work experience).  *Id*.; 20 C.F.R. § 404.1520(g)(1).  If the claimant can make an adjustment to other work, then he is not disabled.  If the claimant cannot perform other work, he will be found disabled.  As previously noted, the ALJ has the burden of proving the claimant can perform other substantial gainful work that exists in the national economy.  *Reddick*, 157 F.3d at 721.

With regard to steps 1-5 in this case, the ALJ found that Plaintiff: (1) had satisfied the first step and had not engaged in substantial gainful activity since December 4, 2007 (TR 24); and (2) had fulfilled the second step and shown that he suffered from the following severe impairments: chronic low back pain with radiculopathy, multilevel degenerative disc disease of his lumbar spine, hypertension, shortness of breath, a reading and a spelling disorder, probable borderline intellectual functioning, depression, anxiety disorder, PTSD, and a history of opioid abuse in remission.  (*Id*.).  With regard to the

third step (3), the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the regulations. (TR 24-26). Therefore, the ALJ determined Plaintiff's RFC and found he had the capacity to perform light unskilled work as it is defined by the regulations at the light exertional level but with some specific restrictions. (TR 26, 29). As a result of this analysis, the ALJ found at the fourth step (4) that Plaintiff is "unable to perform any of his past relevant work" as a bus driver, transport driver, day laborer, or construction laborer. (TR 30). At the last step (5), however, relying on the testimony of a vocational expert, the ALJ found that given Plaintiff's age, education, work experience, and RFC that Plaintiff is capable of making a successful adjustment to other work and performing jobs that exist in significant numbers in the national economy such as small products assembler, parking lot cashier, and pari-mutuel ticket seller. (TR 30-31). Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act. (TR 31).

## III.  ANALYSIS

Plaintiff makes seven arguments for why the Court should overturn the ALJ's decision and remand for an award of benefits. The Court will address each of Plaintiff's arguments in turn.

### A.  Whether the ALJ Properly Rejected the Assessment of Treating Physician Abraham Kuruvilla, M.D.

In his decision, the ALJ expressly rejected the assessment of Plaintiff's treating physician, Dr. Kuruvilla, regarding Plaintiff's abilities. (TR 28-29). Plaintiff argues that the ALJ rejected Dr. Kuruvilla's opinion without providing clear and convincing reasons. (Doc. 17 at 23-25). Plaintiff contends that because Dr. Kuruvilla's assessment was "uncontradicted by any *substantial* evidence in this record, the standard that requires clear and convincing reasons for rejecting a treating physician's opinion should apply." (*Id.* at 23) (emphasis in original).

However, Dr. Kuruvilla's assessment was clearly contradicted. As the ALJ explained, Dr. Kuruvilla "endorsed disability based on [Plaintiff's] back impairment."

(TR 28).  Yet, as the ALJ further explained, another treating physician of Plaintiff's, Dr. Porter, found Plaintiff's "back impairment . . . would *not* preclude his ability to function" and Plaintiff "was able to engage in modified light activities with restrictions in spite of back impairment."  (TR 29) (emphasis in original).  The ALJ expressly "reject[ed]" Dr. Kuruvilla's opinion and "accord[ed] significant weight to Dr. Porter's assessments." (*Id*.).

The ALJ is not required to adopt the opinion of a treating physician such as Dr. Kuruvilla.  The ALJ is merely required to make a decision supported by substantial evidence.  As stated above, *see supra* Section II, if substantial evidence supports the Commissioner's decision, this Court must affirm it.  *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g).  The Court will set aside the ALJ's decision "only if it is not supported by substantial evidence or it is based on legal error." *Magallanes*, 881 F.2d at 750.  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Reddick*, 157 F.3d at 720.

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes*, 881 F.2d at 751).  "When there is a conflict between the opinions of a treating physician and an examining physician [ ] the ALJ may disregard the opinion of the treating physician only if he sets forth 'specific and legitimate reasons supported by substantial evidence in the record for doing so.'"  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  Even the contrary opinion of a non-examining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record."   *Id*. at 1149 (citing *Magallanes*, 881 F.2d at 752).  Dr. Porter's contrary opinion is even more persuasive because he was not merely an examining physician, he was a treating physician himself. Consequently, Plaintiff's argument that the ALJ was required to give clear and convincing reasons for rejecting Dr. Kuruvilla's assessment is unfounded.  The ALJ was

1   merely required to set forth specific and legitimate reasons supported by substantial
2   evidence in the record.

3       The Court finds that the ALJ met this standard.  The ALJ explained that he
4   rejected Dr. Kuruvilla's opinion for two reasons: first, because the opinion was
5   "incongruent with the evidence as a whole," and second, because the opinion did not
6   appear to be "based on a longitudinal treatment history."  (TR 28-29).  These are both
7   specific and legitimate reasons for assigning less weight to Dr. Kuruvilla's opinion.

8       The ALJ was also required to support these reasons with substantial evidence.
9   The ALJ explained that he gave significant weight to Dr. Porter's assessments because
10  "they are generally consistent with the record as a whole."  (TR 29).  Even the "opinion
11  of a non-examining medical expert . . . may constitute substantial evidence when it is
12  consistent with other independent evidence in the record."  *Tonapetyan*, 242 F.3d at 1149
13  (citing *Magallanes*, 881 F.2d at 752).  Therefore, Dr. Porter's opinions, coming from a
14  treating physician, constituted substantial evidence because, as the ALJ explained, they
15  were consistent with the record.

16      Plaintiff attempts to mitigate the ALJ's reasoning for rejecting Dr. Kuruvilla's
17  opinions by arguing that the ALJ was required to explain *how* Dr. Kuruvilla's opinion
18  was inconsistent with the record.  (Doc. 17 at 23-24).  The ALJ merely stated that the
19  opinion was "incongruent with the evidence as a whole."  (TR 28).  However, the ALJ
20  did explain how the record was inconsistent with Dr. Kuruvilla's conclusion that Plaintiff
21  was disabled by laying out the objective medical evidence prior to addressing the medical
22  opinion evidence.  The ALJ began his RFC determination by outlining the significant
23  medical evidence that led to his decision.  (TR 26-27).  The ALJ then addressed
24  Plaintiff's consultations with Paul Lynch, M.D., and how these consultations led the ALJ
25  to conclude that Plaintiff's back impairment was not disabling.  (TR 27).  The ALJ then
26  addresses Plaintiff's hypertension, cardiac issues, mental impairment allegations, and
27  Plaintiff's testimony, before finally addressing the medical opinion evidence.  (TR 27-
28  28).  The Court finds the ALJ sufficiently established what the record did and did not

show and the ALJ did not commit legal error by merely stating Dr. Kuruvilla's findings were not consistent with the evidence as a whole after establishing that evidence. Further, by stating that Dr. Porter's opinions were accorded significant weight because they were generally consistent with the record after establishing what the record demonstrated, the ALJ proffered substantial evidence for his findings.

Thus, the Court finds the ALJ articulated specific and legitimate reasons for disregarding the assessment of Plaintiff's treating physician and he relied on substantial evidence (i.e. Dr. Porter's assessment consistent with the medical record) in reaching his conclusion.  At the very least, the evidence cited by the ALJ was susceptible to more than one rational interpretation.   Therefore, the ALJ's conclusion must be upheld.  *See Gallant*, 753 F.2d at 1453 ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence.") (citations omitted).

### B.      Whether the ALJ Properly Utilized the Assessment of Treating Physician John Porter, M.D.

Next Plaintiff argues that the ALJ mischaracterized Dr. Porter's assessment when the ALJ explained that Dr. Porter found "that the claimant was able to engage in modified light activities with restrictions."  (Doc. 17 at 26).  Further, Plaintiff contends that the ALJ committed legal error when he discounted part of Dr. Porter's assessment by merely stating "the record does not support that claimant's pain would 'frequently' interfere with attention and concentration" without further explanation.  (*Id*.).

The Court finds the ALJ did not err in how he considered Dr. Porter's assessment. The ALJ made it clear that he considered both assessments submitted by Dr. Porter.  (TR 29).  Turning to Dr. Porter's assessments, these reports make it clear that Dr. Porter found Plaintiff retained the ability to occasionally lift and/or carry 20 pounds (TR 594), frequently lift and/or carry 10 pounds (*id*.), stand and/or walk (with normal breaks) for a total of at least 2 hours in an 8 hour work day (*id*.), sit (with normal breaks) for a total of

less than 6 hours in an 8 hour work day (*id*.), use his hands frequently for every ability listed on the form (TR 595), and that Plaintiff's pain affects but does not preclude his ability to function (TR 592).  Given these findings, the ALJ concluded that "Dr. Porter opined that the claimant was able to engage in modified light activities with restrictions in spite of his back impairment."  (TR 29).  The Court finds this characterization of Dr. Porter's opinion is a reasonable assessment of Dr. Porter's findings as they were self-explanatory and did not require any further inferential steps.  The ALJ's conclusion was not a mischaracterization as Plaintiff contends.  At the very least the evidence cited by the ALJ was susceptible to more than one rational interpretation.  Therefore, the ALJ's conclusion must be upheld.  *See Gallant*, 753 F.2d at 1453.

Plaintiff further argues that the Vocational Expert's ("VE's") testimony proves the ALJ's assessment of Dr. Porter's reports was a mischaracterization.  (Doc. 17 at 25-26).  In questioning the VE at the hearing before the ALJ, Plaintiff's counsel asked the VE whether someone with the limitations listed by Dr. Porter could sustain work.  (TR 65-66).  The VE answered that such a person would have difficulty sustaining employment.  (TR 66).  However, Plaintiff's counsel and the VE made it clear that this conclusion was "due to the concentration deficits" that Dr. Porter found.  (*Id*.).  Dr. Porter found Plaintiff's pain was sufficiently severe to frequently interfere with his attention and concentration (TR 592) and this specific finding was the linchpin of the VE's answer.  The ALJ explicitly addressed this point in his opinion and explained his assessment of this part of Dr. Porter's report by stating "the record does not support that the claimant['s] pain would 'frequently' interfere with attention and concentration."  (TR 29).  Therefore, Plaintiff's reliance on the VE's answer to prove that the ALJ mischaracterized Dr. Porter's findings is baseless because the VE's answer was expressly based on this part of Dr. Porter's report that the ALJ rejected.

The only question is whether the ALJ properly rejected this portion of Dr. Porter's report, which he did in spite of Plaintiff's argument to the contrary.  As explained above, *see supra* Section III.A, the ALJ was merely required to give a specific and legitimate

reason for rejecting this part of Dr. Porter's opinion supported by substantial evidence because this part of Dr. Porter's opinion was contradicted by the two medical opinions concerning Plaintiff's mental state that the ALJ cited.  *See* (TR 29).  The ALJ satisfied this standard in rejecting this part of Dr. Porter's finding.  Dr. Porter found Plaintiff's pain would frequently interfere with attention and concentration, i.e. Plaintiff's mental capabilities.  (TR 592).  As the ALJ cited, consultative examiner Brent Geary, Ph.D., and the state agency psychological medical consultant, Randall J. Garland, Ph.D., found that Plaintiff was not incapable and Plaintiff was capable, respectively, of meeting the mental or psychological demands of simple unskilled work with minimal public contact.  (TR 29).  The ALJ explained that the "record does not support" Dr. Porter's finding.  (*Id*.).  The opinions of Dr. Geary and Dr. Garland were accorded "significant weight" because they were consistent the overall record which the ALJ explained throughout his decision.  Accordingly, the ALJ met the legal standard for rejecting a contradicted opinion and did not commit legal error by rejecting this portion of Dr. Porter's findings.

C.   **Whether the ALJ Erred by Not Addressing the Assessment of Treating Psychologist Vimal Abhyanker, M.D.**

Dr. Abhyanker assessed and treated Plaintiff's mental conditions.  Dr. Abhyanker submitted two reports at issue where he expressed Plaintiff was unable to work (TR 270-275; TR 313) and where he found Plaintiff suffered from a series of moderate and moderately severe limitations (TR 384-85).  In reaching his decision, the ALJ did not address Dr. Abhyanker's conclusions.  Plaintiff argues that Dr. Abhyanker "assessed limitations the [VE] found would preclude sustained work.  [Tr. 64-65.]  The ALJ decision ignores this important evidence."  (Doc. 17 at 26).

In making a determination of disability, the ALJ must develop the record and interpret the medical evidence.  *See Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996).  An ALJ must assess a claimant's RFC "based on all the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered in his decision.  *Black v. Apfel*, 143

F.3d 383, 386 (8th Cir. 1998).  "[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'"  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted) (affirming district court's holding that the ALJ was not required to discuss every piece of evidence and that the ALJ's decision was supported by substantial evidence).  "However, if the ALJ rejects significant probative evidence, he must explain why.  *Lusardi v. Astrue*, 350 F. App'x 169, 173 (9th Cir. 2009) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)).

Thus, the issue is whether Dr. Abhyanker's opinion was significant or probative.  The Court finds that it was.  Dr. Abhyanker was a treating physician of Plaintiff's.  The VE explicitly found that with the limitations set forth in Dr. Abhyanker's "Medical Assessment of the Patient's Ability to Perform Work Related Activity" (TR 384-85) that Plaintiff would be unable to "sustain employment because of the totality of all the effects" addressed.  (TR 64-65).  The ALJ did not address this evidence in any way.

Nevertheless, the Court finds this oversight by the ALJ does not constitute grounds for remand or an automatic award of benefits.  By not addressing Dr. Abhyanker's conclusion the ALJ committed harmless error.  "An ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination.  In other words, in each case we look at the record as a whole to determine whether the error alters the outcome of the case."  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quotation and citations omitted).  Dr. Abhyanker's opinion was not supported by the record as it was contradicted by the opinions of Dr. Geary and Dr. Garland, to which the ALJ accorded significant weight.  (TR 29)  The ALJ's description of the record as a whole, which the ALJ cited as the reason he gave significant weight to these opinions, shows there were strong reasons to reject Dr. Abhyanker's opinion and the VE's testimony based solely on Dr. Abhyanker's opinion.  *Isham v. Barnhart*, 163 F. App'x 473, 475 (9th Cir. 2006) ("even if the ALJ had failed to address [treating physician's opinion], such a failure would be harmless error because there were strong reasons to reject [treating

physician's] opinion.").

Further, the ALJ considered Dr. Abhyanker's opinion.  As the ALJ made clear in determining Plaintiff's RFC, he reached his conclusion "after careful consideration of the entire record."  (TR 26).  Dr. Garland's assessment also specifically referenced Dr. Ahbyanker's conclusions in reaching his contrary opinion.  (TR 338).  In addition, Dr. Abhyanker's opinion could also have been accorded less weight by the ALJ because the part of his opinion in question (TR 384-85) was merely a conclusory checklist that was not supported by objective evidence.  *Batson v. Comm'r*, 359 F.3d 1190, 1194-95 (9th Cir. 2004) (treating physician's opinion is only entitled to minimal weight when it is conclusory, it is in the form of a checklist and is not supported by objective evidence); *Martel v. Colvin*, C 11-02961 CRB, 2013 WL 1196879, at *5 (N.D. Cal. Mar. 25, 2013) (citing *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir.1996)) ("an ALJ may permissibly reject a check-off report that does not contain any explanation" of the bases of the examiner's conclusions.).  The Commissioner's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes*, 881 F.2d at 750.  The Court finds the ALJ's decision was based on substantial evidence and the record as a whole supports the ALJ's conclusion.

### D.    Whether the ALJ Properly Rejected Plaintiff's Symptom Testimony

Next Plaintiff argues that the ALJ erred by finding his testimony was not credible and by not providing clear and convincing reasons for rejecting it.  (Doc. 17 at 28-30).  However, to reject the subjective testimony of a claimant, the ALJ must only make specific findings based on the record.  The District Court of California has addressed this issue in a well-reasoned opinion and this Court has adopted that Court's reasoning before in concluding that to the extent there is actually any principled distinction between the two standards, the ALJ must make specific findings supported by the record to explain his credibility evaluation.[1]

_____

[1] The District Court of California set forth its reasoning as follows:

1

2    In *Bunnell*, the court addressed confusion regarding the
standard for evaluating the credibility of subjective complaints
3    and endorsed the standard set forth in *Cotton v. Bowen*, 799
F.2d 1403 (9th Cir.1986), *Varney v. Secretary of Health and*
4    *Human Services*, 846 F.2d 581, 583–584 (9th Cir.1988) and
*Gamer v. Secretary of Health and Human Services*, 815 F.2d
5    1275, 1279 (9th Cir.1987).  *Bunnell*, 949 F.2d at 345.  The so-
called "*Cotton* standard" requires the claimant to produce
6    objective medical evidence of an underlying impairment that is
reasonably likely to be the cause of the alleged pain.  Once
7    that evidence is produced, the adjudicator may not reject a
claimant's subjective complaints based solely on a lack of
8    objective medical evidence fully corroborating the alleged
severity of the pain.  *Bunnell*, 949 F.2d at 343, 345 (citing
9    *Cotton*, 799 F.2d at 1407).  Rather, the adjudicator must
"specifically make findings which support this conclusion.
10    These findings, properly supported by the record, must be
sufficiently specific to allow a reviewing court to conclude the
11    adjudicator rejected the testimony on permissible grounds and
did not arbitrarily discredit a claimant's testimony regarding
12    pain."  *Bunnell*, 949 F.2d at 345–46 (internal citation and
quotation omitted).
13
      Some subsequent decisions have stated that, unless there is
14    affirmative evidence that a claimant is malingering, the ALJ
must articulate "clear and convincing" reasons for rejecting
15    subjective complaints. *See, e.g., Morgan v. Commissioner of*
*the Social Security Administration*, 169 F.3d 595, 599 (9th
16    Cir.1999); *Regennitter v. Commissioner of the Social Security*
*Administration*, 166 F.3d 1294, 1296 (9th Cir.1999); *Reddick*,
17    157 F.3d at 722; *Light*, 119 F.3d at 792; *Lester v. Chater*, 81
F.3d 821, 834 (9th Cir.1995); *Smolen*, 80 F.3d at 1284;
18    *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.1995);
*Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993).  Other
19    decisions state that the ALJ must make specific findings based
on the record, but do not use the "clear and convincing"
20    formula. *See, e.g., Meanel v. Apfel*, 172 F.3d 1111, 1113–14
(9th Cir.1999); *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th
21    Cir.1998); *Chavez v. Department of Health and Human*
*Services*, 103 F.3d 849, 853 (9th Cir.1996); *Byrnes v. Shalala*,
22    60 F.3d 639, 641–42 (9th Cir.1995); *Moncada*, 60 F.3d at 524;
*Orteza v. Shalala*, 50 F.3d 748, 749–50 (9th Cir.1995) (per

23

24

25

26

27

28

1    Turning to the ALJ's decision in this case, the Court finds the ALJ did in fact

2

3    curiam); *Flaten v. Secretary of Health and Human Services*,
     44 F.3d 1453, 1464 (9th Cir.1995).

4    The "clear and convincing" language appears to have been
5    derived from *Swenson v. Sullivan*, 876 F.2d 683 (9th
     Cir.1989), which states that "[t]he Secretary's reasons for
6    rejecting excess symptom testimony must be clear and
7    convincing if medical evidence establishes an objective basis
     for some degree of the symptom and no evidence affirmatively
8    suggests that the claimant was malingering." *Swenson*, 876
9    F.2d at 687 (citing *Gallant v. Heckler*, 753 F.2d 1450, 1455
     (9th Cir.1984)).  In *Gallant*, however, the court did not hold,
10   or even affirmatively state, that an ALJ is required to provide
11   "clear and convincing" reasons for rejecting excess pain
     testimony whenever there is no evidence of malingering.
12   Instead, the court merely observed that no witness had testified
13   that the claimant was malingering, that "[n]o clear and
     convincing reasons were provided by the ALJ" for his
14   rejection of the claimant's testimony, and that the evidence
15   relied on by the ALJ for his credibility evaluation was
     "insubstantial." *Gallant*, 753 F .2d at 1455, 1456.

16   *Bunnell* did not cite either *Gallant* or *Swenson*, and neither
17   *Bunnell* nor the cases it did cite with approval (that is, *Cotton*,
     *Varney*, and *Gamer*) use the "clear and convincing" formula.
18   It thus appears that the "clear and convincing" standard is an
19   unwarranted elaboration of the substantial evidence standard
     of review, and that it was not part of the *Cotton* test adopted in
20   *Bunnell*, where the en banc court attempted to clarify the law.
21   Any difference between the standards may be more apparent
     than real.   There does not appear to be any principled
22   distinction between the two standards as they have been
23   applied.   To the extent that there is or may be a conflict,
     however, *Bunnell* must control since it was an en banc
24   decision.   Accordingly, this Court will adhere to *Bunnell's*
25   requirement that the ALJ make "specific findings" supported
     by the record to explain his credibility evaluation, rather than
26   imposing the arguably more exacting "clear and convincing"
     requirement suggested by *Morgan* and its predecessors.

27   *Ballard v. Apfel*, No. CV 99-2195-AJW, 2000 WL 1899797, at *2 (C.D. Cal. Dec. 19,
28   2000).

- 15 -

make specific findings supported by the record in explaining why he disregarded Plaintiff's subjective complaints.   First, the ALJ found the record failed to support a disabling impairment even though Plaintiff complained of severe low back pain with radiation to his legs.  (TR 26-29).  Specifically, the ALJ noted that Plaintiff's January 2008 physical examination and Plaintiff's February 2008 MRI and nerve conduction study did not support Plaintiff's allegations.  (TR 26-27).  While an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain, *see Rollins*, 261 F.3d at 856-57; *Fair*, 885 F.2d at 602, the lack of objective medical evidence supporting the claimant's claims may support the ALJ's finding that the claimant is not credible.  *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003).

Second, the ALJ found the record shows Plaintiff has poorly complied with psychotropic medication prescriptions to address his mental impairments, Plaintiff failed to attempt a radiofrequency ablation in spite of Plaintiff's testimony to the contrary, and the few spikes in Plaintiff's blood pressure appeared to have been caused by non-compliance with hypertension medication.   (TR 27, 28).   "[U]nexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is a relevant factor in assessing credibility of testimony.  *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.1991); *see also Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ may consider Social Security disability claimant's failure to follow treatment advice as a factor in assessing Social Security disability claimant's credibility).

Third, the ALJ found that Plaintiff's impairments could be effectively controlled with medication.  (TR 27-28).  The ALJ noted that Plaintiff's hypertension is well controlled by medication and Plaintiff himself testified at the hearing that medication helps his back pain and that he has virtually no side effects, which was corroborated by Dr. Lynch's treatment notes.  (TR 27).  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th

Cir. 2006) (citing *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication)).

Finally, the ALJ found the record also showed Plaintiff was "not significantly limited in his functional capacity to any extent that would qualify the impairments as disabling" due to his daily activities.  (TR 28).  *See Matthews*, 10 F.3d at 679-80 (Ninth Circuit Court of Appeals upheld ALJ's rejection of a claimant's subjective complaints where ALJ found claimant's performance of daily activities like housecleaning, light gardening, and shopping undermined claimant's assertion of disabling pain.).  The ALJ noted that Plaintiff is able to prepare simple meals, tend to his personal needs, visit his girlfriend, travel out of state, walk, drive, pay bills, count change, shop at the grocery store, and handle a savings account and bank book.  (TR 28).  Further, progress notes from 2008 and 2009 from Southwest Behavioral Health Services showed Plaintiff's insight and judgment were good, Plaintiff was described as "cheerful and in a good mood" and as "emotionally stable," Plaintiff moved into a new house with his children he was happy about, and Plaintiff himself reported that "everything in his life was fine." (*Id.*).  The ALJ found while Plaintiff's intellectual difficulties are substantiated by the record, there is no evidence that they would preclude basic unskilled work activity.  (*Id.*).

The Court finds the ALJ's credibility finding was a "reasonable interpretation" of the evidence and was supported by substantial evidence in the record, accordingly, "it is not [the Court's] role to second-guess it."  *Rollins*, 261 F.3d at 857 (citing *Fair*, 885 F.2d at 604).  Therefore, the ALJ did not err in rejecting Plaintiff's subjective complaints.

### E.    Whether the ALJ Erred by According Significant Weight to the Assessments of State Agency Psychologists

The ALJ accorded significant weight to the reports of Dr. Geary, the consultative examining psychologist that examined Plaintiff at the request of the state agency, and Dr. Garland, the state agency psychologist that examined the evidence.  (TR 29).  Plaintiff

argues that Dr. Geary did not conclude that Plaintiff *could* meet the mental demands of simple unskilled work, Dr. Geary merely did not conclude that Plaintiff could not meet these mental demands. (Doc. 17 at 31). Thus, Plaintiff concludes that the ALJ's reliance on Dr. Geary's assessment for finding that Plaintiff could perform this work is unfounded. (*Id*.). Further, Plaintiff contends that the ALJ failed to give enough evidence for relying so heavily on the opinion of a non-examining reviewer of Plaintiff's medical record such as Dr. Garland. (Doc. 17 at 32).

The Court finds the evidence reasonably supports the ALJ's decision. First, the ALJ reasonably interpreted the evidence provided by Dr. Geary's assessment. Dr. Geary found that Plaintiff exhibited difficulty with orientation, maintenance of attention and concentration, calculation, spelling, comparative thinking, expression of common sense reasoning, and abstraction, noting Plaintiff was unable to correctly recite the alphabet. However, Dr. Geary found Plaintiff had no limitations in understanding and memory and "mild" limitations in concentration when alone, but "moderate" limitations when he was around others. Further, Dr. Geary found Plaintiff had "moderate" limitations in persistence, social interaction, and adaptation. (TR 328-334). Dr. Geary made no statement to the effect of whether or not Plaintiff could perform unskilled work. In his decision, the ALJ summarized these findings, assigned significant weight to Dr. Geary's assessment because "it is generally consistent with the overall record," and noted "that in spite of the claimant's impairments, Dr. Geary did not conclude that the claimant could not meet the mental or psychological demands of simple unskilled work with minimal public contact consistent with the [ALJ's] decision in this case." (TR 29).

Dr. Garland found Plaintiff was "not significantly limited" in most areas, including: remembering locations and work-like procedures, understanding, remembering, and carrying out simple instructions, sustaining an ordinary routine, making simple work-related decisions, and maintaining socially appropriate behavior. Dr. Garland also found Plaintiff was "moderately limited" in maintaining attention and concentration for extended periods, working in coordination with or proximity to others

without being distracted by them, completing a normal workday and workweek, interacting appropriately with the general public, accepting instructions and responding to criticism from supervisors, getting along with co-workers or peers, and responding appropriately to changes in a work setting. (TR 336-37). However, unlike Dr. Geary, Dr. Garland did state a conclusion and found that based on these findings Plaintiff was able to meet the "basic mental demands of competitive, remunerative, unskilled work on a sustained basis, particularly in settings of minimal contact with the general public." (TR 338). The ALJ also summarized these findings, accorded significant weight to Dr. Garland's assessment because it too was consistent with the weight of the record, and cited Dr. Garland's finding that overall the claimant would be able to perform unskilled work. (TR 29).

Regarding Dr. Geary's report, nothing about the ALJ's assessment of Dr. Geary's report is mischaracterized or untrue. Plaintiff has not shown how any of the limitations outlined by Dr. Geary would prevent or invalidate the ALJ's determined RFC. Indeed, Dr. Garland made substantially similar findings to Dr. Geary and arrived at the conclusion that Plaintiff could perform unskilled work requiring no contact with the public. The ALJ relied on this conclusion by Dr. Garland to arrive at the same conclusion in determining Plaintiff's RFC. Accordingly, the ALJ's RFC properly incorporated the limitations identified by both Dr. Geary and Dr. Garland. The ALJ translated Plaintiff's condition, including the mental limitations assessed by Dr. Geary, into the restrictions outlined in Plaintiff's RFC.

Further, the ALJ's reliance on Dr. Geary's assessment was consistent with the Ninth Circuit Court of Appeals decision in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008). In *Stubbs-Danielson*, an examining physician, Dr. McCollum, stated that the claimant had a slow pace in thinking and actions and that she was "moderately limited" in her ability to perform at a consistent pace without an unreasonable number and length of rest periods and "mildly limited" in several other mental functioning areas. 539 F.3d at 1173. Dr. McCollum did not assess whether the

claimant could perform unskilled work on a sustained basis.  *Id*.  A state agency non-examining psychologist, Dr. Eather, also found the claimant had several substantially similar moderate limitations in mental areas.  *Id*.  However, Dr. Eather did state a conclusion and found that based on his findings claimant could perform simple work without public contact.  *Id*.  The ALJ's RFC mirrored Dr. Eather's conclusion.  *Id*.  The claimant argued that the RFC finding did not capture the pace and mental limitations identified by Dr. McCollom and Dr. Eather.  *Id*.  The Court of Appeals found that the ALJ translated the claimant's condition, as outlined by both Dr. McCollom and Dr. Eather, "into the only concrete restrictions available to him—Dr. Eather's recommended restriction to 'simple tasks.'"  *Id*. at 1174.  The Court of Appeals explained that Dr. Eather's assessment was consistent with Dr. McCollom's assessment and the ALJ's reliance on Dr. Eather's assessment then properly incorporated Dr. McCollum's assessment as well.  *Id*.

In this case, similar to Dr. Eather's assessment in *Stubbs-Danielson*, Dr. Garland's assessment incorporates Dr. Geary's assessment and the ALJ's reliance on Dr. Geary's findings was proper.  Further, the ALJ cited specific findings by Dr. Garland that both Dr. Garland and the ALJ found were supported by the record.  (TR 29).  Accordingly, the ALJ properly relied on Dr. Garland's findings as well.  The Court finds the ALJ did not err in how he utilized the assessments of either Dr. Geary or Dr. Garland in determining Plaintiff's RFC.

**F.   Whether the ALJ Erred in Determining Plaintiff's Mental Functional Capacity** 33-35/28-29

Next Plaintiff argues that the ALJ erred by finding Plaintiff could perform "unskilled work" because he did not perform a "function-by-function" assessment in evaluating Plaintiff's mental residual functional capacity.  (Doc. 17 at 33-35).  Plaintiff explains that SSR 96-8p requires a function-by-function analysis of a claimant's limitations or restrictions.  (*Id*. at 33).  Plaintiff heavily quotes from SSR 96-8p and SSR 85-15 in making his point.  *See* (*Id*. at 33-34).  However, Plaintiff fails to explain how

these rulings apply to the case at bar and how the ALJ in this case specifically failed to meet this standard.  Plaintiff begins his argument with one sentence stating what the ALJ concluded, then ends the argument with the conclusory statement—"[a]s such, the ALJ's mental RFC assessment of 'unskilled work' fell short of the required function-by-function assessment."  (*Id*. at 34).  Plaintiff does no more to analyze the facts of this case.  Plaintiff's mere conclusion is unpersuasive.

Plaintiff fails to point out what functions the ALJ allegedly failed to consider.  In making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on Plaintiff's subjective complaints.  "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.  *See* SSR 96–8p."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Further, the ALJ's conclusion did properly analyze Plaintiff's ability to function.  The ALJ's conclusion was that Plaintiff had the residual functional capacity to perform "light unskilled work as light work is defined in 20 CFR 416.967(b) and 416.968(a), respectively."  (TR 26).  Then the ALJ specifically found Plaintiff "require[d] work with limited public interaction and/or contact."  (*Id*.).  Turning to the regulations the ALJ conspicuously cited,

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . . . [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.

20 C.F.R. § 416.968(a).  The Court finds that the ALJ adequately performed a functional analysis and expressed Plaintiff's mental limitations by specifically finding that Plaintiff "required[d] work with limited public interaction and/or contact" and also by incorporating by reference the specific functional limitations from the regulatory definition of unskilled work.  (TR 26).

Plaintiff also argues this case is similar to a recent case decided by the Court,

*Pronovost v. Astrue*, No. 12-cv-01168-PHX-FJM, 2013 WL1092902 (D. Ariz. Mar. 15, 2013).   In *Pronovost*, the Commissioner conceded the ALJ's decision was deficient because the ALJ merely limited the claimant to "unskilled work" with some physical restrictions without providing detailed functional limitations for the claimant's mental impairments as required by SSR 85-16.   The Commissioner moved for remand for further proceedings rather than remand for benefits as the claimant requested.   The Court agreed with the Commissioner and remanded the case for further proceedings.

However, the ALJ in this case, unlike the ALJ in *Pronovost*, did more than simply limit Plaintiff to "unskilled work" with some physical restrictions.   As explained above, the ALJ limited Plaintiff to unskilled work per the specific definition in the regulations and specifically addressed Plaintiff's mental capacity by limiting Plaintiff to work with limited public interaction and/or contact.   Accordingly, the ALJ adequately determined Plaintiff's mental functional capacity.

**G.      Whether the ALJ Determined Plaintiff's RFC Based on the Record**

Finally Plaintiff argues that the ALJ failed to explain how the medical evidence supported his RFC assessment.   (Doc. 17 at 35-37).   Plaintiff concedes that the ALJ discussed the medical evidence, but argues that the ALJ did not consider Plaintiff's individual limitations and apply them when determining Plaintiff's RFC.   (*Id*. at 37).   Essentially, Plaintiff appears to argue that the ALJ's use of a hypothetical when questioning the VE did not incorporate Plaintiff's specific limitations and was proof that the ALJ did not consider Plaintiff's capacities.   (*Id*. at 36).

When questioning the VE, the ALJ asked the VE to consider someone,

> 45 years old that was limited to light, unskilled work . . . .
>
> And there would be postural restrictions.   There would be no crawling or climbing or crouching or squatting or kneeling, and there would be lower extremity limitations, so there would be no use of the legs or feet for pushing or pulling or foot or leg controls.   No interaction with the public.   In other words, it would be a job working with things, not people.

> And the job would offer a sit-stand option so that the employee could actually alternate between sitting and standing during a normal workday without affecting their productivity.
>
> Now, are there jobs that fit that hypothetical that exist in the national economy?

(TR 60-61).  To which the VE answered in the affirmative and named three jobs that fit this profile.  (TR 61-62).

The Court finds the ALJ's discussion of Plaintiff's RFC supports the ALJ's ultimate determination of that RFC with substantial evidence.  As discussed above, *see supra* Section II, substantial evidence is more than a mere scintilla, but less than a preponderance.  *Reddick*, 157 F.3d at 720.  "The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ."  *Gallant*, 753 F.2d at 1453 (citation omitted).   In his assessment, the ALJ discussed Plaintiff's back pain and the evidence, Plaintiff's hypertension, cardiac issues, Plaintiff's mental impairments, his daily activities and limitations, Plaintiff's substance abuse, his testimony, and the medical opinion evidence.  (TR 26-29).  All of this information led to the determination that Plaintiff could perform light unskilled work "as light work is defined by" the regulations—i.e. work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . . .  [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.  20 C.F.R. § 416.968(a).  This definition of unskilled work was used in by the ALJ in his hypothetical posed to the VE.  Further, the ALJ added Plaintiff's specific limitations to the hypothetical as the ALJ had determined them to be based on the specific evidence he discussed—i.e. Plaintiff's postural restrictions, back limitations, mental limitations, and functionality limitations.  The ALJ's discussion of the evidence supports the hypothetical question he posed to the VE.  Consequently, the Court finds the ALJ did not err in determining Plaintiff's RFC.

**IV.   CONCLUSION**

Accordingly, the ALJ did not err in finding that Plaintiff was not disabled within the meaning the Social Security Act.   Though oral argument was requested on the Motion, because both the parties submitted memoranda discussing the law and evidence in support of their positions and oral argument would not have aided the Court's decisional process, the Court will vacate the oral argument concerning this matter.   *See e.g., Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Investors Group, Inc. v. Pacific. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

Based on the foregoing,

**IT IS ORDERED** that the decision of the Administrative Law Judge is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and vacate the oral argument concerning this matter set for August 7, 2013, at 04:00 PM (Doc. 26).   The judgment will serve as the mandate of this Court.

Dated this 30th day of July, 2013.

James A. Teilborg
Senior United States District Judge